UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SAIT DEMIR,

        Petitioner,

        -v-

MICHAEL BALL, *Warden, Buffalo Federal Detention Facility, Batavia, New York,*

        Respondent.[*]

_____

26-cv-00525-JON
DECISION & ORDER

Pending before the Court[1] is a petition for a writ of habeas corpus ("petition"), filed on March 20, 2026, (all dates are in 2026 unless otherwise indicated) by Petitioner Sait Demir. Dkt. No. 1, and a Response to an Order to Show Cause[2] ("Response"), filed by the Respondents[3] on April 3, Dkt. No. 6. The petition seeks a writ of habeas corpus in order to obtain a bond hearing.

### Facts

Demir is a 30-year-old native and citizen of Turkey. On November 16, 2024, he entered the United States from Mexico by unlawfully crossing the Mexican-California border near Campo, California. That same day he arrived at the San Ysidro, California,

---

[*] "[L]longstanding practice confirms that in habeas challenges to present physical confinement-'core challenges'-the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The Clerk is requested to add MICHAEL BALL, Warden, Buffalo Federal Detention Facility as a Respondent in the caption, remove all other Respondents from the caption, dismiss the other Respondents from the case, and conform the official caption accordingly.

[1] The case was assigned to this Court on May 1, 2026. Dkt. entry following Dkt. No. 13.

[2] Chief Judge Wolford issued the Order to Show Cause on March 20. Dkt. No. 2.

[3] The caption of the petition lists several Government officials as respondents. As explained in n.*, they are not proper respondents in this habeas corpus case. Nevertheless, because the Response is filed in their names, this opinion will refer to the originally listed respondents as "Respondents."

Port of Entry and sought admission into the United States. Border Patrol Officers took him into custody. Because they encountered him within 14 days of his unlawful entry and within 100 miles of the border, he was subject to a process known as "expedited removal."[4] Immigration and Nationality Act ("INA") § 235(b)(1)(A)(iii), 8 U.S.C. § 1225(b)(1)(A)(iii).[5] Still later that day, Demir was issued a Notice and Order of Expedited Removal.

On December 5, 2024, Government officials released Demir from custody and granted him parole into the United States for one year pursuant to INA § 212(d)(5)(A), 8 U.S.C. § 1182 (d)(5)(A). He then established residence in Syracuse, New York. On January 16, 2025, he filed Form I-589, Application for Asylum and for Withholding of

---

[4] The process has been explained by the Congressional Reference Service. https://www.congress.gov/crs-product/R45314#ifn119. It was authorized by the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No. 104-208, § 302, 110 Stat. 3009, 546, 579-80 (1996). In brief, summary removal applies to aliens who are not admissible because they lack valid entry documents or attempted to obtain admission through fraud. With some exceptions, such aliens are subject to expedited removal without compliance with all of the procedural protections normally applicable to removal.

[5] The significance of Demir's being found within 14 days of his unlawful entry and within 100 miles of the border is not apparent from INA § 235, 8 U.S.C. § 1225, because neither the phrase "14 days of his unlawful entry" nor the phrase "100 miles of the border" appear in section 1225.

The significance of these phrases for the expedited removal process emerges from the careful analysis made by Chief Judge Wolford in *St. Charles v. Barr*, 514 F. Supp. 3d 570, 576 (W.D.N.Y. 2021):

"When the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, was passed, the Attorney General's authority under § 1225(b)(1)(A)(iii)(I) was delegated to the Secretary of the Department of Homeland Security ("DHS"). In 2004, DHS used this authority to designate as 'certain other aliens' the following:

'Aliens determined to be inadmissible under sections 212(a)(6)(C) or (7) of the Immigration and Nationality Act who are present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of the U.S. international land border, and who have not established to the satisfaction of an immigration officer that they have been physically present in the U.S. continuously for the fourteen-day (14-day) period immediately prior to the date of encounter.'

"Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877-01, 48879 (Aug. 11, 2004) . . . . In other words, aliens who unlawfully enter the United States and are detained within 14 days of entry and within 100 miles of the border are treated the same as 'arriving aliens' under the current statutory and regulatory scheme."

Removal. The form stated, "You may remain in the United States until your asylum application is decided." Petition 2 (quoting Form I-589).[6]

On May 28, 2025, an official of the Department of Homeland Security mailed to Demir a Notice of Dismissal of Form I-589. The letter stated, "The asylum office cannot process your Form I-589 at this time."[7] The letter also informed Demir that he could still have his "claim of fear" considered by an asylum officer through the credible fear screening process and explained how he could obtain a credible fear interview. One requirement for requesting such an interview was that Demir must "explain that you have a fear of return to your country."[8]

On May 29, 2025, Immigration and Customs Enforcement ("ICE") agents arrested Demir in Syracuse. The Petitioner alleges that the ICE officers did not have or serve an arrest warrant. The Respondents do not dispute this assertion. The Respondents allege that Demir was taken into custody "for effectuation of the removal order against him." Response 5, referring to the Order for Expedited Removal that had been issued six months earlier on November 16, 2024. Demir was transported to the Buffalo Federal Detention Center.

On March 31, Demir expressed a fear of persecution if returned to Turkey and was referred for a credible fear interview pursuant to INA § 235(b)(1)(A)(ii), 8 U.S.C.

---

[6] Because this case was initiated by a petition for writ of habeas corpus, rather than an appeal from a decision of the B.I.A., the record does not contain a Certified Administrative Record. As a result the Form I-589 is not in the record. However, the Government has not disputed the accuracy of the quoted statement in the form.

[7] This letter is attached to the petition for a writ of habeas corpus.

[8] The phrase "fear of return to your country" cannot be taken literally. Most, if not all, aliens facing the prospect of removal have a fear of return to their country. Because the letter referred to the "asylum office," the phrase is reasonably understood to mean "fear of persecution if returned to your country," which is a basis for obtaining asylum.

§ 1225(b)(1)(A)(ii).[9] On April 21, counsel for the Respondents informed Chief Judge Wolford by letter that an immigration judge had affirmed a finding by the Department of Homeland Security that Demir "does not have a credible fear of removal [to Turkey]." Dkt. No. 10.

On June 17, this Court held a hearing, attended remotely by counsel. The Petitioner is currently confined at the Buffalo Federal Detention Center in Batavia, New York.

**Jurisdiction**

The Respondents initially claim that this Court lacks jurisdiction "to hear Demir's claims."[10] Chief Judge Wolford has already exercised subject matter jurisdiction in this case,[11] but "law of the case" does not apply to a determination of such jurisdiction. *Rezzonico v. H&R Block, Inc.*, 182 F.3d 144, 149 (2d Cir. 1999). Thus, a judge subsequently assigned to a case always has an obligation to ascertain that subject matter jurisdiction exists, at least when such jurisdiction is challenged.

Congress has conferred jurisdiction on district courts to issue a writ of habeas corpus to ascertain whether a person is confined in violation of the Constitution or laws

---

[9] This credible fear interview, conducted by an asylum officer, should not be confused with the proceeding, conducted by an immigration judge, at a hearing on a claim for asylum convened to determine whether an alien has a reasonable fear of persecution on specified grounds if returned to his home country. 8 U.S.C. § 1158.

[10] Response 5. In a footnote to the Response, the Respondents state, "This Court has already addressed and rejected Respondents' arguments regarding jurisdiction, but they are raised here to preserve them for appeal. *See Lieogo v. Freden, et al.*, No. 6:25-CV-06615 EAW, 2025 WL 3290694, at *2-4 (W.D.N.Y. Nov. 26, 2025)." Apparently, the Respondents believe that a decision of one district court in the Western District of New York is binding precedent for other district courts in the Western District. That is not so. *Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011); *Reid v. BCBSM, Inc.*, 787 F.3d 892, 895 n.2 (8th Cir. 2015); *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004); *United States v. Articles of Drugs*, 818 F.2d 569, 572 (7th Cir. 1987). This Court therefore considers the jurisdictional claim and, having considered it, rejects it.

[11] Text Order, Dkt. No. 2.

4

or treaties of the United States, 28 U.S.C. § 2241(c), and this jurisdiction is available for claims by aliens in detention, *Demore v. Kim*, 538 U.S. 510, 516-17 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001).

## The Merits

On the merits of the habeas corpus petition, the initial issue is whether the statute governing Demir's detention is INA § 235(b), 8 U.S.C. § 1225(b)(1), as the Respondents contend, or INA § 236(a), 8 U.S.C. § 1226(a), as the Petitioner contends.

The clearest indication section 1225(b)(1) does not apply to Demir derives from its caption. The caption is "Inspection of aliens arriving in the United States and certain other aliens *who have not been admitted or paroled*." 8 U.S.C. § 1225(b)(1) (emphasis added). On December 5, 20024, ICE released Demir on parole. The fact that his parole was later canceled does not detract from the significance of his previous release on parole. Section 1225(b)(1) does not say "who are not currently released on parole." The wording of the title is clear. It exempts Demir from the coverage of section § 1225(b)(1). *See Dubin v. United States*, 599 U.S. 110, 120-21 (2023) ([The statute's] title and terms both point to a narrower reading).

Although the title of a statute is not always a reliable basis for interpreting ambiguous language within the statute, the title of section 1225(b)(1) reliably determines its coverage.

The Respondents primarily contend that the return of Demir to custody after the cancellation of his parole "essentially amounted to a continuation of his initial border encounter." Response 4. "Thus," the Respondents continue, "Demir falls under 8 U.S.C.

§ 1225(b)(1)(A)(iii), which applies the expedited removal process to an alien who unlawfully enters the country without inspection and who is then encountered within 14 days of arrival and within 100 miles of the border." *Id.*

The Respondents' argument is similar to the Government's argument in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026) ("*da Cunha*"). In that case, da Cunha, an alien who had entered unlawfully without inspection, was granted work authorization, similar to Demir's grant of parole. *See* 8 C.F.R. § 274a. And also like Demir, da Cunha was arrested far from where he had entered the United States. The Government contended that da Cunha was subject to detention pursuant to 8 U.S.C. § 1225(b)(2)(A) because he was seeking admission.

The Second Circuit rejected the Government's argument. The Court ruled that da Cunha, arrested at a great distance from where he entered the United States, was "an applicant for admission" but was not "seeking admission." *da Cunha*, 175 F.4th at 74. That distinction led the Court to rule that da Cunha's detention was governed by section 1226(a), not by section 1225(b)(2)(A), and that, because the Government had conceded that da Cunha was not a flight risk or a danger to the community, he was entitled to a bond hearing. *Id*. at 94-95. The Court therefore affirmed the District Court's decision granting the writ of habeas corpus to enable da Cunha to have a bond hearing. *Id*.

Demir is no more "continuing his initial border encounter" than da Cunha was and, like da Cunha, his detention is governed by section 1226(a), not section 1225(b)(2)(A).

Examination of the Second Circuit's docket reveals that the mandate has not yet been issued in the *da Cunha* case. Until the mandate issues, jurisdiction remains with the

Court of Appeals, and the opinion could be revised. Nevertheless, a published opinion of the Court of Appeals for this Circuit is "binding precedent when it is decided," even though the mandate has not issued. *Cox v. Dep't of Justice,* 111 F.4th 198, 209 (2d Cir. 2024). This Court is bound by Judge Bianco's scholarly lead opinion for the panel (fully concurred in by Judge Cabranes) and would consider it extremely persuasive even if it were not binding precedent.

The fact that Demir is subject to section 1226(a) does not answer the ultimate question in this case: whether Demir is entitled to a bond hearing.[12] But on this issue too *da Cunha* is persuasive authority. First, the Court of Appeals ruled that detention of an alien subject to a removal order without a bond hearing is a denial of due process, or more accurately, a denial of liberty without due process of law. "Petitioner is protected by the Fifth Amendment's Due Process Clause, requiring any civil detention to be 'nonpunitive in purpose and effect,'" *da Cunha*, 175 F.4th at 94 (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)), and the Court of Appeals affirmed the District Court's grant of the petition for habeas corpus to afford da Cunha a bond hearing. *Id*. at 96.

---

[12] The fact that Demir's apprehension and detention is covered by section 1226(a) also raises a question as to the validity of his apprehension. The statute provides, "On a *warrant* issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § (a) (emphasis added). "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), *rearrest* the alien under *the original warrant*, and detain the alien." *Id*. § 1226(b) emphases added). While at liberty on parole, Demir was stopped and taken into custody by ICE officers who did not have a warrant. Sweeping a person off the street without a warrant (in the absence of any claim that the person was then committing a crime) and placing the person in confinement would appear to strike at the heart of the protection provided by the Due Process Clause. *Cf*. Magna Carta, cl. 39 ("No free man shall be seized or imprisoned . . . except . . . by the law of the land."). Nevertheless, Demir's habeas corpus petition seeks a bond hearing because of his long confinement, and this Court adjudicates only that claim.

As of the date of Demir's hearing before this Court, he had been in custody for 12 and one-half months.[13] From the date of da Cunha's arrest on September 26, 2025, *da Cunha v. Freden*, No. 25-CV-6532-MAV, 2025 WL 3280575 (W.D.N.Y. Nov. 28, 2026) at 4, to the District Court hearing on his habeas corpus petition on October 20, 2025, *id*. at 1-2, he had been in custody just short of one month. The length of Demir's detention suffices to require a bond hearing.[14] This Court makes no decision as to a minimum period of detention for an alien confined pursuant to 1226(a) that requires a bond hearing.

The Court of Appeals had previously decided that, at a bond hearing for an alien held in detention pursuant to section 1226(c), the Government has the burden to prove by clear and convincing evidence that the alien is a flight risk or a danger to the community. *Black v. Decker*, 103 F.4th 133, 155-56 (2d Cir. 2024), *cert. granted sub nom. Genalo v. Black*, No. 25-886, 2026 WL 1718025 (Sup. Ct. June 15, 2026); *Velasco Lopez v. Decker*, 978 F.3d 842, 851-53 (2d Cir. 2020).

In both *Black* and *Velasco Lopez*, the Court of Appeals reasoned (1) that the requirements of due process governing the petitioners' claim were derived from the three-factor test in *Mathews v. Eldrige*, 424 U.S. 319, 335 (1976), and (2) that the second factor—"the risk of an erroneous deprivation of [the plaintiff's liberty interest] through the procedures used," *id.*—required placing on the Government the burden of proving by clear and convincing evidence that the alien was not a flight risk or a danger to the

---

[13] The Government has not obtained travel documents for Demir's removal, nor, as reported at the hearing, contacted appropriate officials of Turkey to obtain such documents.

[14] The Supreme Court recently granted a petition for a writ of certiorari to decide the question "Whether there is a point at which an alien's detention under [8 U.S.C.] § 1226(c), pending a decision on whether he is to be removed, becomes 'unreasonably prolonged' such that due process requires a bond hearing." *Genalo* (question 1). Section 1226(c) applies to aliens who have been convicted of committing certain crimes. Demir, confined pursuant to section 1226(a), has not been convicted of committing any crimes.

community. The aliens in *Black* had committed serious crimes and were therefore detained pursuant to section 1226(c). The procedural ruling in *Black* applies *a fortiori* to Demir, who is detained pursuant to section 1226(a).[15]

Accordingly, Demir's petition for a writ of habeas corpus is granted to the extent that a bond hearing shall be held within the Western District of New York no later than five days from the date of this opinion. Because Demir will still be in custody unless and until bond is set and posted, he will remain in custody while transported to the hearing and at the hearing or, if convenient, an Immigration Judge may hold the bond hearing at the place of Demir's current confinement. At the hearing, the Government shall bear the burden of proof to show that Demir is not a flight risk or a danger to the community.

It is further Ordered that the Respondents and any persons acting in concert with them shall not remove Demir from the Western District of New York until further order of this Court. This case remains open to afford either party an opportunity to seek further relief.

SO ORDERED.

Hon. Jon O. Newman
Senior Circuit Judge of the U.S. Court of Appeals
for the Second Circuit, sitting by designation

DATED: June 25, 2026
    Buffalo, NY

---

[15] The Supreme Court's recent grant of a petition for a writ of certiorari in *Genalo*, 2026 WL 1718025, listed as question 2: "whether, in . . . a bond hearing [for an alien detained under section 1226(c)], due process requires placing the burden on the government to justify the alien's continued detention by clear and convincing evidence."